**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| GONZALO VALLE ARRIZON, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHAD F. WOLF, *et al.*,<br><br>*Defendants*. | Case No. 1:20-cv-788<br><br>Hon. Hala Y. Jarbou<br>United States District Judge |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## Table of Contents

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

I. Deferred Action for Childhood Arrivals. ......................................................... 2

II. DACA Litigation History. ................................................................................ 3

III. The Wolf and Edlow Memoranda. ..................................................................... 3

IV. This Litigation. .................................................................................................. 7

LEGAL STANDARD ................................................................................................ 8

ARGUMENT ............................................................................................................ 9

CONCLUSION ........................................................................................................ 13

# Table of Authorities

## CASES

*Batalla Vidal v. Nielsen*,
279 F. Supp. 3d 401 (E.D.N.Y. 2018) .......... 4

*Burlington Northern R. Co. v. Maintenance of Way Employees*,
481 U.S. 429 (1987) .......... 10

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 9

*Car Carriers, Inc. v. Ford Motor Co.*,
745 F.2d 1101 (7th Cir. 1984) .......... 11

*Demis v. Sniezek*,
558 F.3d 508 (6th Cir. 2009) .......... 9

*Duncan v. Tennessee Valley Authority Retirement System*,
123 F. Supp. 3d 972 (M.D. Tenn. 2015) .......... 10

*Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*,
491 F.3d 320 (6th Cir. 2007) .......... 9

*Grendell v. Ohio Supreme Court*,
252 F.3d 828 (6th Cir. 2001) .......... 9

*Kentucky v. U.S. ex rel. Hagel*,
759 F.3d 588 (6th Cir. 2014) .......... 9

*Kiser v. Reitz*,
765 F.3d 606 (6th Cir. 2014) .......... 9

*Kloss v. RBS Citizens N.A.*,
996 F. Supp. 2d 574 (E.D. Mich. 2014) .......... 11

*Lawrence v. Blackwell*,
430 F.3d 368 (6th Cir. 2005) .......... 9

*Lewis v. Continental Bank Corp.*,
494 U.S. 472 (1990) .......... 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 9, 11

*Memphis A. Philip Randolph Institute v. Hargett*,
--- F.3d ---, 2020 WL 6074331 (6th Cir. Oct. 20, 2020) .......... 9

*NAACP v. Trump*,
298 F. Supp. 3d 209 (D.D.C. 2018) .......... 4

*NAACP v. Trump*,
315 F. Supp. 3d 457 (D.D.C. 2018) .......... 4

*Nichols v. Muskigum Coll.*,
318 F.3d 647 (6th Cir. 2003) .......... 4

*Phila. Indem. Ins. Co. v. Youth Alive, Inc.*,
732 F.3d 645 (6th Cir. 2013) .......... 9

*Radiant Global Logistics, Inc. v. Furstenau*,
951 F.3d 393 (6th Cir. 2020) .......... 10

*Regents of Univ. of Cal. v. DHS.*,
279 F. Supp. 3d 1011 (N.D. Cal. 2018) .......... 3, 4

*Regents of Univ. of Cal. v. DHS.*,
140 S. Ct. 1891 (2020) .......... 4

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) .......... 2

*Spencer v. Kemna*,
523 U.S. 1 (1998) .......... 10

*Texas v. United States*,
523 U.S. 296 (1999) .......... 9

*Wells v. Brown*,
891 F.2d 591 (6th Cir. 1989) .......... 11

**REGULATIONS**

8 C.F.R. § 274a.12 .......... 2

8 C.F.R. § 212.5 .......... 2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15 .......................................................................................................... 12

## INTRODUCTION

Plaintiffs are two Deferred Action for Childhood Arrivals ("DACA") recipients. They sought "advance parole" which, if granted, would have permitted them to travel outside the United States and return without jeopardizing their ability to remain DACA recipients. However, they attempted to file their advance parole applications in the brief period between the Supreme Court's recent decision invalidating earlier efforts to rescind DACA and the issuance of new guidance from United States Citizenship and Immigration Services ("USCIS") to its officers regarding the processing of DACA-based advance parole requests. USCIS refused to accept their applications for emergency advance parole consistent with existing guidance at that time. USCIS has since issued guidance to its officers clarifying where DACA recipients' advance parole requests may be processed, including emergency requests. USCIS' website also includes information for the public on filing for DACA-based advance parole.

Plaintiffs now seek to challenge the Department of Homeland Security's ("DHS") DACA policies, arguing that Acting Secretary of Homeland Security is not validly serving and therefore that his amendments to the DACA policy are not valid. But Plaintiffs' claims fail at the starting gate, because their allegations are moot. The only injury Plaintiffs have ever alleged is their inability to travel for their grandfather's funeral and novena, but both of those events have finished, and Plaintiffs have not alleged any intention to seek advance parole for any other reason. Nor have they alleged any other way in which DHS's current DACA policies injure them. This Court therefore should dismiss this lawsuit for lack of jurisdiction.

## BACKGROUND

### I. Deferred Action for Childhood Arrivals

On June 15, 2012, then-Secretary of Homeland Security Janet Napolitano announced the policy known as DACA, or Deferred Action for Childhood Arrivals. DACA made deferred action—a practice of individualized enforcement discretion to issue a reversible notification that DHS does not intend to remove an alien for a set period of time—available to "certain young people who were brought to this country as children" and remained here in violation of the immigration laws. *See* Janet Napolitano, Memorandum: Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children ("Napolitano Mem.").[1] Under DHS regulations, aliens granted deferred action may receive certain benefits, including work authorization for the same period if they establish economic necessity. *See* 8 C.F.R. § 274a.12(c)(14). The DACA policy also allowed DACA recipients to apply for discretionary advance parole document to return to the United States after temporary travel abroad pursuant to 8 C.F.R. § 212.5(f). The Napolitano Memorandum stated that deferred action pursuant to DACA was an "exercise of prosecutorial discretion." Napolitano Mem. at 1; *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999); *see* 8 C.F.R. § 274a.12(c)(14) (describing "deferred action" as "an act of administrative convenience to the government which gives some cases lower priority"). To that end, the Napolitano Memorandum explained that DACA "confer[red] no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." Napolitano Mem. at 3.

Under the DACA policy in effect prior to September 5, 2017, USCIS would generally only grant advance parole for a DACA recipient to travel abroad in furtherance of:

---

[1] *Available at* https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf (last accessed October 26, 2020).

a) "Educational purposes," including but not limited to "semester abroad programs or academic research,"

b) "Employment purposes," including but not limited to "overseas assignments, interviews, conferences, training, or meetings with clients; and"

c) "Humanitarian purposes," including but not limited to "travel to obtain medical treatment, attend funeral services for a family member, or visit an ailing relative."[2]

On September 5, 2017, then-Acting Secretary of Homeland Security Elaine Duke rescinded the Napolitano Memorandum in an attempt to wind down the DACA policy in an orderly fashion. *See* Elaine C. Duke, Memorandum: Rescission of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" ("Duke Mem.").[3] Under the Duke Memorandum, DHS generally continued to honor the stated validity period for previously approved applications for advance parole, but it no longer approved any new advance parole applications, and it closed all pending applications, with refunds of the associated fees. Duke Mem. at 4.

## II. DACA Litigation History

In five related cases challenging the Duke Memorandum, on January 9, 2018, the U.S. District Court for the Northern District of California granted a motion for a preliminary injunction, and ordered Defendants to "maintain the DACA program on a nationwide basis on the same terms and conditions as were in effect before the rescission on September 5, 2017, including allowing DACA enrollees to renew their enrollments." *Regents of the Univ. of Cal. v. DHS*, 279 F. Supp. 3d 1011, 1048 (N.D. Cal. 2018). That injunction, however, specifically excluded (1) "new

---

[2] *See* https://www.uscis.gov/sites/default/files/document/forms/i-131instr.pdf (last accessed October 26, 2020).
[3] *Available at* https://www.dhs.gov/news/2017/09/05/memorandum-rescission-daca (last accessed October 26, 2020).

applications from applicants who have never before received deferred action" and (2) DACA-based requests for advance parole. *Id.* Shortly thereafter, a co-extensive preliminary injunction was issued by this U.S. District Court for the Eastern District of New York. *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401 (E.D.N.Y. 2018). And the U.S. District Court for the District of Columbia later issued a final judgment vacating the Duke Memorandum in its entirety, *NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018), and also rejected a subsequent agency explanation (the Nielsen Memorandum) on similar grounds, *NAACP v. Trump*, 315 F. Supp. 3d 457 (D.D.C. 2018).

The Supreme Court ultimately granted certiorari (or certiorari before judgment) in all of the California, District of Columbia, and New York DACA-rescission cases. On June 18, 2020, the Supreme Court issued a decision setting aside the Duke Memorandum as arbitrary and capricious under the APA, and declining to consider the Nielsen Memorandum. The Court acknowledged that DHS's authority to rescind DACA was undisputed. *Regents*, 140 S. Ct. 1891, 1905 (2020). Indeed, it recognized that deciding the best way to move forward with "a program with the breadth of DACA" involves "important policy choices" that are left to DHS, *id.* at 1910, and that DHS has "considerable flexibility in carrying out" this policy-making responsibility, *id.* at 1914. Nonetheless, the Court held that the Duke Memorandum failed to consider alternatives to rescinding DACA in its entirety, and failed to adequately address the possibility of legitimate reliance interests related to DACA. *Id.* at 1912, 1913. Accordingly, the Supreme Court held that a remand to DHS was appropriate "so that it may consider the problem anew." *Id.* at 1916. The Supreme Court also ordered vacatur of both preliminary injunctions, which had required maintaining portions of the DACA policy during the litigation. *See Regents*, 140 S. Ct. at 1916.

### III. The Wolf and Edlow Memoranda

On July 28, 2020, Acting Secretary Wolf formally rescinded the Duke Memorandum and the Nielsen Memorandum. *See* Chad F. Wolf, Memorandum: Reconsideration of the June 15, 2012 Memorandum Entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" ("Wolf Mem.").[4] The Wolf Memorandum announced the Acting Secretary's determination, "[i]n accordance with the Supreme Court's decision," "to give careful consideration to whether the DACA policy should be maintained, rescinded, or modified." Wolf Mem. at 5. Given the Acting Secretary's serious enforcement policy concerns, the Wolf Memorandum also made certain immediate changes to DACA. *Id.* at 4-5.

The Wolf Memorandum explains that, until further notice, DHS (1) will not accept first-time DACA requests; (2) will continue to accept renewal requests from DACA recipients, though it will limit the period of any future grants of DACA to one year, rather than the two years provided under the Napolitano Memorandum; and (3) will reject DACA recipients' requests for advance parole, absent "exceptional circumstances." *See id.* at 5. These changes apply to both pending and prospective requests. *Id.* at 7. The Wolf Memorandum noted that "nothing in this memorandum precludes the exercise of deferred action on a truly individualized, case-by-case basis when and if warranted." *Id.* at 6. The Wolf Memorandum also reiterates that DHS will "[c]ontinue to comply with the information-sharing policy" regarding information provided by DACA requestors announced in 2012. *Id.* at 8.

On August 21, 2020, USCIS Deputy Director Joseph Edlow signed a directive to USCIS personnel entitled "Implementing Acting Secretary Chad Wolf's July 28, 2020 Memorandum, 'Reconsideration of the June 15, 2012 Memorandum 'Exercising Prosecutorial Discretion with

[4] *Available at* https://www.dhs.gov/sites/default/files/publications/20_0728_s1_daca-reconsideration-memo.pdf (last accessed October 26, 2020)

Respect to Individuals Who Came to the United States as Children.''" *See* Joseph Edlow, Memorandum: Implementing Acting Secretary Chad Wolf's July 28, 2020 Memorandum ("Edlow Mem.").[5] The memorandum provided "additional guidance to facilitate implementation of the specific changes to the DACA policy that are within the purview of USCIS." *Id.* On the subject of advance parole, the memorandum provided that "the determination of whether to grant advance parole to a DACA recipient based on exceptional circumstances is a case-by-case assessment involving the assessment of the totality of the factors presented," and it listed certain examples of "travel that may fit within the statutory standard for parole," including:

- Travel to support the national security interests of the United States including U.S. military interests;
- Travel in furtherance of U.S. federal law enforcement interests;
- Travel to obtain life-sustaining medical treatment that is not otherwise available to the alien in the United States;
- Travel needed to support the immediate safety, well-being, or care of an *immediate* relative, particularly minor children of the alien.

Edlow Mem. at 8.

Edlow also directed USCIS to "reject and return the fees for all" advance parole applications then pending at both "the DACA specific filing location" and "at non-DACA filing locations," and stated that "those DACA recipients [who] still wish to submit a request for advance parole . . . may submit their Form I-131 applications consistent with filing instructions that will be announced on the USCIS website." *Id.* at 6, 7. In subsequent guidance emailed to USCIS Field Offices, Edlow also clarified how the Wolf Memorandum applies to emergency applications for

[5] *Available at* https://www.uscis.gov/sites/default/files/document/policy-alerts/dacamemo.pdf (last accessed October 26, 2020).

advance parole, and that Field Office Directors may approve emergency advance parole requests. *See* Ex. 1.

The USCIS website now instructs "DACA recipient[s] requesting advance parole based on urgent humanitarian reasons or significant public benefit as noted in" the Wolf Memorandum and the Edlow Memorandum to send their applications to the USCIS Phoenix Lockbox.[6] DACA recipients "experiencing an extremely urgent situation . . . may request an emergency advance parole appointment" at their "local field office."[7]

**IV. This Litigation**

Plaintiffs are Gonzalo Valle Arrizon and Efren Valla Arrizon, two brothers and Mexican nationals residing in Branch County, Michigan. They are both DACA recipients. On August 17, 2020, Plaintiffs' grandfather in Mexico passed away. The same day, Plaintiffs allege that they attempted to schedule an appointment at USCIS's Detroit Field Office to file applications for emergency advance parole to allow them to travel to Mexico to attend the funeral. On August 19, 2020, Plaintiffs allege that they attempted to submit their applications in-person at the Detroit Field Office, but were eventually told that USCIS field offices were not allowed to issue emergency advance parole documents for DACA recipients.

Plaintiffs filed this action on August 21, 2020, seeking declaratory and injunctive relief under the Administrative Procedure Act ("APA") and the Religious Freedom Restoration Act ("RFRA") against DHS and USCIS, the leadership of each agency, and certain officers at the USCIS Detroit Field Office. Specifically, Plaintiffs allege (1) that their applications should have

---

[6] *See* https://www.uscis.gov/i-131-addresses (last visited October 26, 2020).

[7] *See* https://www.uscis.gov/green-card/green-card-processes-and-procedures/travel-documents/emergency-travel (last visited October 26, 2020).) On September 11, 2020 USCIS Deputy Director for Policy Joseph B. Edlow issued guidance stating that USCIS Field Offices retain the authority to consider emergency advance parole requests made by DACA recipients at their local USCIS Field Office. *See* Ex 1.

been approved (or at least accepted for adjudication) as presenting "exceptional circumstances" under the Wolf Memorandum; (2) that the Wolf Memorandum is null and void because Acting Secretary Wolf's appointment was unlawful; and (3) that Defendants impinged on Plaintiffs' religious freedom in violation of RFRA, 41 U.S.C. § 2000bb-1, by causing them to miss their grandfather's funeral. Plaintiffs sought an order requiring Defendants to accept and adjudicate their emergency advance parole applications, as well as declarations that Defendants' actions violated the APA and the Immigration and Nationality Act, that the Wolf Memorandum is null and void, and that Acting Secretary Wolf was not lawfully appointed and may not continue to serve as Acting Secretary of Homeland Security.

At the time of the complaint, Plaintiffs alleged that their "family in Mexico are currently participating in a 'novena,' an ancient tradition of devotional praying participated in by Roman Catholics and other Christian groups that is part of the funeral rites and mourning process for Plaintiffs' grandfather," and that they "feel compelled to visit Mexico and participate in the novena." Compl., ECF 1 at 13–14, ¶¶ 48–49, PageID.13-14. However, in their Pre-Motion Conference Request, ECF 5 ("Conference Request"), Plaintiffs confirmed that they "have now also missed the novena in honor of their grandfather." Conference Request at 2, PageID.39. Neither the Complaint not the Conference Request alleges that either Plaintiff has any current desire or plan to seek advance parole for any reason. Plaintiffs did not seek emergency relief from this Court.

## LEGAL STANDARD

On a motion to dismiss for lack of jurisdiction, the Court takes the allegations in the complaint as true, but need not accept legal conclusions or unwarranted factual allegations. *See, e.g.*, *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003); *Phila. Indem. Ins. Co. v.*

*Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). The Court may also consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

**ARGUMENT**

Federal courts possess limited jurisdiction, and those "who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirements imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To establish standing to invoke federal jurisdiction, "a plaintiff must show an injury in fact that is fairly traceable to the defendant's conduct and is likely to be redressed by a favorable juridical decision." *Memphis A. Philip Randolph Institute v. Hargett*, --- F.3d ---, 2020 WL 6074331, at * 4 (6th Cir. Oct. 15, 2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992)). To secure declaratory or injunctive relief, a plaintiff "must show actual present harm or a significant probability of future harm." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001). Federal courts therefore lack jurisdiction "to consider any case or issue that has 'lost its character as a present, live controversy,'" or in other words, become moot. *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009). It is not sufficient for a dispute to have been live at the time suit was filed—"[t]here must be a live case or controversy 'at every stage of the litigation' for [a federal court] to have Article III jurisdiction." *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014) (quoting *Lawrence v. Blackwell*, 430 F.3d 368, 370–71 (6th Cir. 2005)).

Conversely, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Kiser v. Reitz,* 765 F.3d 601, 606 (6th Cir. 2014) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

The doctrine of mootness is subject to a "narrow exception" for disputes that are "capable of repetition, yet evading review." *Radiant Global Logistics, Inc. v. Furstenau*, 951 F.3d 393, 396 (6th Cir. 2020). But that doctrine "applies only in exceptional situations" where "the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (cleaned up). That exception thus ensures federal jurisdiction over "the sort of action which, by reason of the inherently short duration of the opportunity for remedy, is likely forever to 'evad[e] review.'" *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 481 (1990) (quoting *Burlington Northern R. Co. v. Maintenance of Way Employees*, 481 U.S. 429, 436 n.4 (1987)).

This case is moot. The *only* injury Plaintiffs allege in the Complaint, and the basis for both their APA and RFRA claims, is their inability to attend their grandfather's funeral and novena services.[8] Each of those events now lies in the past, and Plaintiffs have alleged no other intention to travel outside the United States for any reason. This Court is therefore powerless to provide relief to Plaintiffs, and there is no live case or controversy that could support the exercise of this Court's jurisdiction.

In their Pre-Motion Conference Request, Plaintiffs claim that because they "still have living grandparents residing in Mexico," this disputes falls within the "capable of repetition" exception. Conference Request at 2–3, PageID.39-40. They also generally assert that "Plaintiffs are adversely impacted by other aspects of the [Wolf] memo such as the decision to limit DACA

---

[8] Plaintiffs frame their request for declaratory relief as a separate count in the Complaint. *See* Compl., ECF at 12-13, ¶¶ 43-45, PageID.12-13. "Declaratory judgment, however, is not a cause of action, but a specific type of relief. In order for plaintiffs to be entitled to declaratory judgment, they must first succeed on a cognizable cause of action." *Duncan v. Tennessee Valley Authority Retirement System*, 123 F. Supp. 3d 972, 982 (M.D. Tenn. 2015).

validity periods to one year whereas previously grants had been for a period of two years." *Id.* at 3, PageID.40. Neither argument has merit.

To begin with, neither argument is supported by any factual allegation in the Complaint. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," or, by the same reasoning, in a Request for a Pre-Motion Conference. *Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 584 n.2 (E.D. Mich. 2014) (quoting *Car Carriers, Inc. v. Ford Motor Cor.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Thus, even applying "the less stringent standard" that governs *pro se* litigants (which Plaintiffs are not), the Sixth Circuit has not "been willing to abrogate basic pleading essentials" such as alleging the relevant facts in the complaint. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). In the absence of any factual allegations about, for example, the health (or even the existence) of Plaintiffs' living grandparents or other family members abroad, or Plaintiffs' intention to seek renewal of their DACA status, or when Plaintiffs would need to apply for any such renewal, it is impossible for Plaintiffs to establish that they are subject to any actual or imminent injury-in-fact as a result of the Wolf Memorandum. Notably, Defendants pointed out these defects in the Complaint in their opposition to Plaintiffs' Pre-Motion Conference Request on September 8, 2020, *see* ECF 7 at 2, PageID.62, yet Plaintiffs have made no effort to amend their Complaint to properly raise any additional allegations. Plaintiffs thus fail to satisfy the requirement of showing a reasonable probability that they will be subject to the same action again.

Second, even if Plaintiffs had adequately alleged a factual basis that could support the conclusion that they may someday once again apply for advance parole to travel outside the United States to attend a funeral, and even if such non-specific allegations could suffice for Article III standing, *but see Lujan*, 504 U.S. at 564 ("[s]uch 'some-day' intentions—without any descriptions

of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent injury that our cases require."), there is *still* no realistic prospect that their applications would again be denied for the same reason. Plaintiffs allege that their applications were turned away because the Detroit Field Office could not issue advance parole documents for DACA recipients, not because their reason for travel was determined not to constitute an "exceptional circumstance" under the terms of the Wolf Memorandum. But in guidance released the same day that Plaintiffs filed this case, and in subsequent guidance on its website, USCIS clarified how DACA recipients may apply for advance parole. If and when Plaintiffs again apply for advance parole, they and USCIS will have the benefit of that guidance, and can direct their applications to the correct location –which, since September 11, 2020, could include requesting an emergency advance parole appointment at a local USCIS Field Office by contacting the USCIS Contact Center if the Plaintiffs are experiencing an extremely urgent situation. *See* Ex. 1. At that point, USCIS will be in a position to make a determination as to whether Plaintiffs' reason for travel qualifies as an "exceptional circumstance." Until then, however, USCIS has made no such determination.[9] In short, Plaintiffs' claims based on the applications they actually attempted to file are now moot, and any future claims they may wish to file based on the possible denial of as-yet hypothetical applications are not yet ripe.

Plaintiffs' argument also misconstrues the "capable of repetition" exception's other requirement, of showing that the challenged action is inherently likely to evade review due to its short duration. The action that Plaintiffs seek to challenge is the Wolf Memorandum and its criteria

---

[9] Plaintiffs are aware of the Edlow Memorandum, which the cited in their Pre-Motion Conference Request, *see* Conference Request at 2 n.6, PageID.39, but despite the passage of more than two months since that guidance issued, and their current right under Rule 15 to seek leave to amend, FRCP 15(a), they have as yet made no effort to amend their complaint or update their pleadings to reflect this substantial development.

for granting advance parole—including subsequent guidance about where to send applications for advance parole—which is plainly not the kind of transient action that would otherwise evade review. Indeed, Plaintiffs admit that they intend to challenge the Wolf Memorandum "in large part . . . based on the same grounds" raised in a challenge brought by the New York Attorney General, joined by 16 other state attorneys general. Conference Request at 1, PageID.38. The Wolf Memorandum is currently the subject of active litigation in that case as well as several others. *See State of New York v. Donald J. Trump*, 17-cv-05288-NGG-JO (E.D.N.Y.); *see also, e.g.*, *Santa Fe Dreamers Project v. Wolf*, 20-cv-02465 (D.D.C); *Maria Alvarado Santoyo v. Wolf*, 4:20-cv-03278 (S.D. Tex.). There is simply no reason to believe that applying standard principles of mootness in this case will permit the Wolf Memorandum to escape judicial review.

## CONCLUSION

For the reasons stated above, this Court should dismiss the Complaint.

Dated: October 26, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

BRAD P. ROSENBERG
Assistant Branch Director

/s/ *Cormac A. Early*
CORMAC A. EARLY (D.C. 1033835)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 616-7420
Fax: (202) 616-8470
Email: cormac.a.early@usdoj.gov

ANDREW BYERLY BIRGE
United States Attorney

RYAN D. COBB
Assistant United States Attorney
Post Office Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404
Ryan.Cobb@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the limitations of Local Civil Rule 7.2(b)(i) because it contains 3,862 words, measured using Microsoft Word 2016.

/s/ Cormac A. Early
Cormac A. Early